## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THOMAS DAVID GOERTZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **Case No. 13-CV-675-JED-TLW** |
| | ) | |
| **TOMMY SHARP, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Thomas David Goertz is a state prisoner represented by attorney James L. Hankins. Respondent filed a response (Doc. 6) and provided the state court record necessary for resolution of Petitioner's claims (Docs. 6, 7, 8, 9). Petitioner filed a reply (Doc. 13). For the reasons discussed below, the petition for writ of habeas corpus is denied.

### *BACKGROUND*

On May 23, 2007, Petitioner was caring for two of his children, eighteen-month-old M.F. and seven-month-old J.F., at his home in Mayes County, Oklahoma, while the mother of the children, Rhonda Fogleman (Rhonda), went to the courthouse to sign legal papers. At approximately 11:00 a.m., Petitioner telephoned Rhonda to tell her that J.F. had been crying all morning. Rhonda advised Petitioner to give J.F. Orajel or Tylenol because he was teething. When she returned to Petitioner's home at around 1:00 p.m., Rhonda found J.F. in his crib. He was cold and trying to catch his breath, as if he had been crying for a long time. Although Rhonda was unable

---

[1]     Petitioner is in custody at Howard McLeod Correctional Center where Tommy Sharp is the Warden. Under Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*, Tommy Sharp, Warden, is the proper party respondent in this case. Therefore, Tommy Sharp, Warden, is hereby substituted as the respondent.

to awaken J.F. or elicit any response from him, Petitioner said that she should just let him sleep since he had been crying all morning.  Rhonda laid down beside J.F. and took a nap.  She woke up about 3:00 p.m. to the sound of J.F. gasping for air.  She knew something was wrong.  She called Petitioner into the room and they tired unsuccessfully to awaken J.F.

Rhonda telephoned J.F.'s pediatrician and was told to call 911.  Petitioner called 911.  The responding paramedic found J.F. posturing, arching his back, and unable to breathe.  J.F.'s left pupil was dilated and he did not have a conscious reaction to anything.  The paramedic requested a helicopter and J.F. was air-lifted to St. Francis hospital in Tulsa, Oklahoma.

At the hospital, J.F. was placed on a ventilator.  Multiple CT scans, X-rays, and a sputum culture were taken; white blood cell counts and clotting factors were measured.  The examining physicians observed no external injuries, no bruises, and no broken bones.  However, the CT scans showed that J.F. had severe brain swelling.  On May 24, 2007, Stephen Groves, M.D., a pediatric ophthalmologist, examined J.F.'s eyes.  Each eye had a band containing more than 1000 retinal hemorrhages and "circular traction and elevation changes" or folding of the retinal surface.  On May 25, 2007, physicians determined that J.F. was brain dead and removed him from the ventilator.  Shortly thereafter, J.F. died.

Prior to J.F.'s death, Department of Human Services (DHS) officials took custody of J.F. and would not allow Petitioner to be present in J.F.'s hospital room.  On May 24, 2007, two Oklahoma State Bureau of Investigation (OSBI) agents interviewed Petitioner in a breakroom at the hospital.  The interview was audio-recorded.  The agents assured Petitioner that he was not under arrest.  During the hour long interview, Petitioner repeatedly denied shaking or otherwise mistreating J.F., but eventually admitted that he had shaken J.F. one time as he said "hush."  After the interview,

2

Petitioner recanted his admission, stating that he had lied about shaking J.F. so that the DHS officials would allow him to be in his dying son's room.  But after being allowed only a 5-minute visit with J.F., Petitioner said "that wasn't worth it."  The OSBI agent refused to audio-tape the recantation but agreed to note it in his report.

On May 25, 2007, after J.F. died, Petitioner was taken into custody at the hospital.  He was charged in Mayes County District Court, Case No. CF-2007-110, with First Degree Child Abuse Murder.  During a seven day jury trial, the prosecution presented the testimony of Rhonda Fogleman, the testimony of physicians who examined and treated J.F.,  the testimony of the paramedic who responded to the 911 call, and the testimony of one of the OSBI agents who interviewed Petitioner.  In addition, the medical examiner, Ronald Distefano, D.O., testified that the cause of J.F.'s death was blunt trauma of the head and the manner of death was homicide.  After the State rested, Petitioner presented two expert witnesses, David Posey, M.D., and Ronald Gabriel, M.D., who testified that J.F. had pneumonia and died a natural death resulting from sepsis and septic shock.  Several family members and Petitioner's ex-wife also testified for the defense.  Lastly, Petitioner testified in his own defense and denied shaking J.F. on May 23, 2007.  He also testified that his admission to the OSBI agents was not true.  As rebuttal witnesses, the prosecution called Robert Block, M.D., Tulsa's Chief Child Abuse Examiner, and Mitch Collier, M.D., a family care physician in Locust Grove, Oklahoma, who had provided pediatric care for J.F.  On April 21, 2009, at the conclusion of trial, the jury found Petitioner guilty of the lesser included offense of Child Abuse and recommended a sentence of seventeen and one half (17 1/2) years imprisonment.

On September 18, 2009, defense counsel filed a motion for new trial.  During Petitioner's formal sentencing hearing, held October 13, 2009, the trial judge denied the motion for new trial and

sentenced Petitioner, in accordance with the jury's recommendation.  Attorney Allen Smallwood represented Petitioner at trial.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals (OCCA).  Represented by attorney James L. Hankins, Petitioner raised the following propositions of error:

| | |
|---|---|
| Proposition I: | The trial court erred in instructing the jury on the lesser-included crime of child abuse over defense objection. |
| Proposition II: | The trial court erred in denying Goertz's motion to suppress his statement made to the OSBI. |
| Proposition III: | The trial court erred in denying the defense motion for a new trial. |
| Proposition IV: | The evidence presented at trial was insufficient to sustain a conviction of child abuse beyond a reasonable doubt. |
| Proposition V: | Prosecutorial misconduct rendered the trial fundamentally unfair. |
| Proposition VI: | The trial court's decision to instruct the jury on the lesser included offense of child abuse constituted state-induced ineffective assistance of counsel. |
| Proposition VII: | The cumulative effect of multiple legal errors rendered the trial fundamentally unfair. |

(Doc. 6-1).  Petitioner also filed a motion "to supplement the record on appeal and for evidentiary hearing on his claim of ineffective assistance of trial counsel" (Doc. 6-2).  In an unpublished Summary Opinion, filed May 10, 2012, in Case No. F-2011-37 (Doc. 6-4), the OCCA determined that Petitioner was not entitled to an evidentiary hearing on his claim of ineffective assistance of trial counsel and affirmed Petitioner's conviction and sentence.

On May 30, 2012, Petitioner filed a petition for rehearing (Doc. 6-5).  By Order filed July 13, 2012 (Doc. 6-6), the OCCA acknowledged that its direct appeal opinion failed to address

Petitioner's request to supplement the record. The OCCA proceeded to deny the request to supplement the record and then denied the petition for rehearing. *Id.*

On October 11, 2013, continuing to be represented by attorney Hankins, Petitioner filed his federal petition for writ of habeas corpus (Doc. 1). Petitioner raises the same seven (7) claims presented to the OCCA on direct appeal. *Id.* In response, Respondent asserts that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) on grounds 1, 2, and 4-7, and that ground 3 is not cognizable on federal habeas corpus review. *See* Doc. 6.

## *ANALYSIS*

### A.     **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Respondent concedes, *see* Doc. 6 at 2 ¶ 6, and the Court agrees, that Petitioner fairly presented the substance of his claims to the OCCA on direct appeal. Therefore, the Court finds that Petitioner exhausted state remedies for his claims as required by 28 U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011); *Williams v. Taylor*, 529 U.S. 420 (2000).

### B.     **Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams v. Taylor*, 529 U.S. 362, 402 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001).   When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002).  Further, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's claims on direct appeal. *See* Doc. 6-4. Therefore,  the § 2254(d) standard applies to this Court's analysis of Petitioner's claims.

### 1.      Instructing on lesser included offense

In Ground 1, Petitioner claims that the trial court erred in instructing the jury on the lesser included crime of Child Abuse over his objection.  *See* Doc. 1 at 4-5.  On direct appeal, Petitioner argued that his defense had always been geared to the crime charged, First Degree Murder, and that the decision to instruct on the lesser included offense amounted to "legal surprise."  *See* Doc. 6-1 at 21, 26-29.  In addition, Petitioner argued that "there was no evidence of simple child abuse only." *Id.* at 22-25.  Petitioner claimed that "[u]nder the evidence presented at trial, Goertz is either guilty of First Degree Murder by Child Abuse, or he is not guilty of any crime."  *Id.* at 23.  The OCCA rejected Petitioner's arguments, citing *Jones v. State*, 134 P.3d 150, 154 (Okla. Crim. App. 2006); *McHam v. State*, 126 P.3d 662, 670 (Okla. Crim. App. 2005); *Dill v. State*, 122 P.3d 866, 869 (Okla. Crim. App. 2005), and finding that "the trial court did not abuse its discretion in instructing the jury

on the lesser included offense of child abuse as such instructions were supported by the evidence and Appellant was not unfairly surprised." *See* Doc. 6-4 at 2.

In this habeas action, Petitioner argues that he was "denied his right to Due Process of law under the Fourteenth Amendment because he was not given adequate notice of a lesser included offense instruction; and he was surprised unfairly when the trial court instructed the jury on the lesser offense over his objection" (Doc. 13 at 1). Petitioner claims that by giving the lesser included offense instruction, the trial judge allowed the jury to give an obvious "compromise verdict" and that his defense throughout the trial was to argue the cause of death rather than the identity of the abuser. *Id.* at 2-3.

Generally, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005). Significantly, it "has long been recognized that [a lesser included offense] can . . . be beneficial to the defendant because it affords the jury a less drastic alternative to the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). "It is axiomatic that an indictment or charging information for one crime carries with it notice that lesser offenses included within the specified crime are also charged and must be defended against." *McHam v. Workman*, 247 F. App'x 118, 120 (10th Cir. 2007) (unpublished)[2]; *see also Bibbee v. Scott*, 201 F.3d 447, *4 (10th Cir. 1999) (unpublished) (holding petitioner received sufficient notice of lesser included offense, for due process purposes, from indictment on greater offense). Furthermore, no Supreme Court decision has recognized a right

---

[2]        This and all other unpublished opinions herein are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

of a defendant to waive, or to preclude, the giving of a lesser included offense instruction to the jury. *McHam*, 247 F. App'x at 120.

Because the charge of First Degree Child Abuse Murder included notice of lesser included offenses, Petitioner's claim, based on an alleged lack of notice that he had to defend against the lesser included offense of Child Abuse, is without merit. In addition, because the Supreme Court has not found that a defendant has the right to waive the giving of a lesser included offense instruction, Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) because he cannot demonstrate that a right to assert an "all or nothing" defense is derived from Supreme Court precedent. *McHam*, 247 F. App'x at 120 (citing *Carter v. Ward*, 347 F.3d 860, 863 (10th Cir. 2003)). Lastly, Petitioner has failed to demonstrate that the inclusion of an instruction on the lesser included offense of Child Abuse rendered his trial fundamentally unfair. Habeas corpus relief is denied on Ground 1.

### 2.     Denial of motion to suppress statement made to OSBI

In Ground 2, Petitioner claims that the trial court erred in denying his motion to suppress his statement made to the OSBI. *See* Doc. 1 at 6. The record reflects that, on June 13, 2008, defense counsel filed a motion to suppress statements, arguing that the statements were not made voluntarily. *See* Doc. 8-3, O.R. Vol. I at 55-61. On July 22, 2008, the motion to suppress statements was denied. *Id.* at 75. On the first day of trial, outside the presence of the jury and just before the prosecutor read the Information, the trial judge denied a motion in limine filed by the defense, finding that Petitioner was not under arrest, that he was free to leave, that he started the interrogation voluntarily and that nothing indicates it became involuntary, and that it was not a custodial interrogation. *See* Doc. 7-6, Tr. Vol. III at 558. In addition, during the trial testimony of Jerry Neville, one of the OSBI agents

8

who interviewed Petitioner, defense counsel reurged the motion to suppress statement, arguing it was a custodial interrogation and Petitioner's statement had been coerced. *See* Doc. 7-7, Tr. Vol. IV at 1039. The trial judge overruled the motion, *id.*, and the redacted audio-taped statement was played for the jury, *id.* at 1053.

On direct appeal, Petitioner argued that his statement, made to the OSBI at the hospital where J.F. was being treated, should have been suppressed because circumstances, including Goertz's understanding that he would not be allowed to see his dying son unless he gave the statement, rendered it involuntary. *See* Doc. 6-1 at 31-32. The OCCA denied relief on this claim, citing *Nilsen v. State*, 203 P.3d 189, 191 (Okla. Crim. App. 2009); *Seabolt v. State*, 152 P.3d 235, 237 (Okla. Crim. App. 2006), and finding that "the trial court did not abuse its discretion in denying Appellant's motion to suppress his statement." *See* Doc. 6-4 at 2.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself and an involuntary statement by a defendant violates the Due Process Clause of the Fifth Amendment (applicable to the States through the Fourteenth Amendment). *Blackburn v. Alabama*, 361 U.S. 199, 205 (1960). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court concluded that, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. The Court admonished that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Id.* at 476. In *Yarborough v. Alvarado*, 541 U.S. 652, 660-63 (2004), the Supreme Court summarized its decisions on the "custody" requirement of *Miranda*. Furthermore, in *J.D.B.*

9

*v. North Carolina*, 564 U.S. 261 (2011), the Supreme Court, relying on prior decisions, including *Alvarado*, emphasized that determining the "in custody" requirement for *Miranda* purposes requires the police and court to "examine all of the circumstances surrounding the interrogation, including any circumstance that would have affected how a reasonable person in the suspect's position would perceive his or her freedom to leave." *Id.* at 270-71 (internal quotation marks and citations omitted). It is an objective analysis. *Id.*

The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. *See Malloy v. Hogan*, 378 U.S. 1, 7 (1964). A confession is involuntary or coerced if the "totality of the circumstances" demonstrates that the confessor did not freely decide to give the statement. *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991). Under the totality of the circumstances approach, both the characteristics of the accused and the details of the interrogation are considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The assessment of the totality of the circumstances may include consideration of the length and location of the interrogation; evaluation of the maturity, education, physical and mental condition of the defendant; and determination of whether the defendant was properly advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). However, "coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

In this case, the OSBI agents did not advise Petitioner of his rights under *Miranda* prior to the interview. However, in his habeas petition, Petitioner does not argue that this was a custodial interview subject to the requirements of *Miranda*. The Court finds that the circumstances

surrounding Petitioner's interview confirms that a reasonable person would have felt at liberty to terminate the interview and leave.  There was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.  The record demonstrates that Petitioner agreed to accompany the agents to the hospital breakroom and to speak to the agents about circumstances leading up to J.F.'s hospitalization.  *See* Doc. 7-7. Tr. Vol. IV at 1040.  Petitioner was 28 years old at the time of the interview.  *See* Doc. 9, State's Ex. 5A.  Although he was taking prescription drugs Percocet, Soma, and Restoril, Petitioner told the OSBI agents that the drugs did not affect his memory at all.  *Id.*  Petitioner was coherent and answered the agents' questions clearly and appropriately.  *Id.*  The length of the interview, approximately one hour, *id.*, was not excessive.  The agents did not threaten Petitioner with arrest and prosecution if he did not confess nor did they make promises to Petitioner.  *Id.*  They told Petitioner that the District Attorney would decide what charges to file, if any.  *Id.*  Significantly, the agents never promised Petitioner that he could see his son if he confessed to shaking him.  *Id.*

During most of the interview, Petitioner denied shaking or doing anything to harm J.F.  In fact, as noted by Petitioner in his reply, he denied hurting J.F. "at least 18 times."  *See* Doc. 13 at 4.  However, near the end of the interview, Petitioner admitted that he "shook the baby once" as he told him to hush.  *See* Doc. 9, State's Ex. 5A.  Petitioner also said that the shaking incident happened before he called Rhonda at 11:00 a.m.  *Id.*  Petitioner stated that "it scared [him] that [he] had done that."  *Id.*  After admitting that he shook J.F. one time, Petitioner asked the OSBI agents if he could see J.F.  *Id.*  One of the agents told Petitioner that he was unable to answer that question because J.F. was in DHS custody and that Petitioner would have to ask the DHS officials.  *Id.*

11

As stated above, the OCCA found that the trial court did not abuse its discretion in denying Petitioner's motion to suppress his statement. This Court cannot grant relief under AEDPA by conducting its own independent inquiry into whether the state court was correct as a *de novo* matter.[3] "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). Relief is available under § 2254(d)(1) only if the state court's application of clearly established federal law is objectively unreasonable. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 410. Under that standard and based on the totality of the circumstances of Petitioner's interview, the Court cannot find that the OCCA's application of clearly established federal law was objectively unreasonable. Hence, habeas corpus relief on Ground 2 is denied.

---

[3]     In his reply, Petitioner relies on *People v. Thomas*, 22 N.Y.3d 629 (N.Y. 2014), to support his argument that his statement should have been suppressed as involuntary. *See* Doc. 13-1. However, *Thomas* is distinguishable from the instant case. In *Thomas*, the New York state appellate court, unconstrained by the deferential review required under the AEDPA, ruled that, because the defendant's custodial interrogation was coercive, his motion to suppress statements was granted and a new trial ordered. The defendant's interrogation lasted in excess of 9 hours. *Id.* at 637. The interrogators threatened to arrest the defendant's wife if he continued to deny responsibility; they told the defendant that, after his child had already died, his disclosure of the circumstances under which he had injured his child was essential to assist the doctors attempting to save the child's life; and they made numerous false assurances to cajole the defendant into making inculpatory statements. *Id.* at 643-45. In contrast, during Petitioner's 1 hour interview, the OSBI agents never threatened to arrest anyone.

    Although the agents did tell Petitioner that his statements could assist the doctors in providing treatment for J.F., the baby was still alive at the time of Petitioner's interview. Lastly, even though the agents repeatedly described Petitioner's alleged shaking of J.F. as "accidental" and "unintentional," they also stated multiple times that the District Attorney would decide what charges to file, if any.

### 3.      Denial of motion for new trial

In Ground 3, Petitioner claims that the trial court erred in denying his motion for a new trial. *See* Doc. 1 at 7.  The record demonstrates that, on September 18, 2009, defense counsel filed a motion for new trial.  *See* Doc. 8-4, O.R. Vol. II at 228-235.  During Petitioner's sentencing hearing, held October 13, 2009, the trial judge denied the motion for new trial.  *See* Doc. 8-2 at 11.  On direct appeal, Petitioner argued that his motion for a new trial, challenging allegedly prejudicial comments made by two of the State's expert witnesses, Drs. Block and Wallace, should have been granted. *See* Doc. 6-1 at 35-38.  Petitioner claimed that the State's witnesses erroneously testified that the published findings of Dr. Faris Bandak[4] concerning shaken baby syndrome had been refuted in "published" scientific articles.[5]  *Id.* at 35.  Once defense counsel learned that there were no "published" articles refuting the findings of Dr. Bandak, he filed a motion for a new trial.[6]  *Id.* at 36.

---

[4]      Dr. Bandak was not present during Petitioner's trial and did not testify.

[5]      Based on the results of his study, Dr. Bandak concluded that the force required to cause a fatal brain injury when a baby is shaken would necessarily cause severe injury to the neck of the baby.  The study was central to Petitioner's defense because J.F. suffered no neck injury. Witnesses for the prosecution testified that the Bandak study has been proven to be faulty "due to a significant math error," *see* Doc. 7-7, Tr. Vol. IV at 991, and that the study's conclusions are "totally unfounded," *see* Doc. 7-9, Tr. Vol. VI at 1491.  Prosecution witnesses testified that it is unusual to see neck injuries in cases of abusive head trauma, *see* Doc. 7-7, Tr. Vol. IV at 932, and that sometimes you see injury to the muscles of the neck and sometimes you don't.  (*See* Doc. 7-9, Tr. Vol. VI at 1496-97).

[6]      Dr. Bandak's study was published in the journal Forensic Science International.  *See* Doc. 8-4, O.R. Vol. II, Ex. 7 at 309-318 (Bandak, Faris, *Shaken baby syndrome: A biomechanics analysis of injury mechanisms*, Forensic Science International 151 (2005) 71-79).  Two responses critical of Dr. Bandak's study were published as "Letters to the Editor" in Forensic Science International.  *See id.*, Exs. 8, 9 at 319-324 (Margulies, Susan, et al., *Shaken baby syndrome: A flawed biomechanical analysis*, Forensic Science International 164 (2006) 278-279; Rangarajan, N., et al., Forensic Science International 164 (2006) 280-281).  In his motion for a new trial (Doc. 8-4, O.R. Vol. II at 232), Petitioner complained that those letters were not peer-reviewed publications and that the prosecution witnesses had falsely testified that the studies critical of Dr. Bandak's study were "published."

13

The OCCA denied relief, citing *Spence v. State*, 177 P.3d 582, 584 (Okla. Crim. App. 2008); *Andrew v. State*, 164 P.3d 176, 204 (Okla. Crim. App. 2007), and finding that "the trial court did not abuse its discretion in denying Appellant's motion for a new trial as there was no reasonable probability that, had the evidence at issue been introduced at trial, it would have changed the outcome of the trial." *See* Doc. 6-4 at 2.

An allegation of trial procedural error does not present a federal question cognizable in a federal habeas corpus action. *See Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979) (holding that claims of mere state court procedural or trial error not resulting in a deprivation of fundamental rights were not cognizable in a federal habeas corpus action). Under state law, a defendant may request a new trial when new evidence is discovered. *See* Okla. Stat. tit. 22, § 952 (listing grounds for a new trial). The test for whether a motion for a new trial should be granted based upon newly discovered evidence is: (1) whether the evidence is material; (2) whether the evidence could not have been discovered before trial with reasonable diligence; (3) whether the evidence is cumulative; and (4) whether the evidence creates a reasonable probability that, had it been introduced at trial, it would have changed the outcome. *Andrew*, 164 P.3d at 204 (citation omitted).

Here, Petitioner has failed to demonstrate that the trial court's denial of his motion for a new trial resulted in deprivation of his fundamental rights. The fact that the findings of Dr. Bandak were controversial was made clear to Petitioner's jury when his own expert witness acknowledged, on cross examination by the State, that the Bandak study had been criticized for containing "numerical errors." *See* Doc. 7-8, Tr. Vol. V at 1339. Given the evidence concerning the Bandak study presented at trial, Petitioner fails to demonstrate that additional testimony demonstrating the lack of peer-reviewed published criticism of the Bandak study would have changed the outcome of trial.

14

The trial court's denial of the motion for new trial did not result in the deprivation of Petitioner's fundamental rights.

### 4.    Sufficiency of the evidence

In Ground 4, Petitioner alleges that the evidence presented at trial was insufficient to support his conviction of Child Abuse. *See* Doc. 1 at 9.  On direct appeal, Petitioner claimed that because "the *only* evidence that could *possibly* lead to a conviction comes from experts," and the experts for the State and for the defense disagreed concerning the cause of J.F.'s death, the evidence was insufficient to sustain his conviction. *See* Doc. 6-1 at 40.  The OCCA denied relief, citing *Head v. State*, 146 P.3d 1141, 1144 (Okla. Crim. App. 2006); *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985); *Coddington v. State*, 142 P.3d 437, 456 (Okla. Crim. App. 2006), and finding that "the totality of the evidence presented at trial, including Appellant's own statement, provided sufficient evidence, beyond a reasonable doubt, to support the jury's finding that Appellant committed the crime of child abuse." *See* Doc. 6-4 at 2-3.

In a habeas proceeding, this Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard of review respects the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. *Id.*  Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997);

15

*Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).  Instead, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).  Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *U.S. v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986).  Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a finding of guilt was contrary to, or an unreasonable application of, *Jackson*.  28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying the *Jackson* standard, this Court concludes that there was sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt of Child Abuse.  Under Oklahoma law, Petitioner could not be convicted of Child Abuse unless the State proved beyond a reasonable doubt the following elements:  first, a person willfully/maliciously engaged in; second, injuring; third, of a child under the age of eighteen; or:  first, a person willfully/maliciously engaged in; second, harm; third, to the health/safety; fourth, of a child under the age of eighteen; fifth, by a person responsible for the child's health/safety. *See* Doc. 8-4, O.R. Vol. II at 211 (Instruction No. 28 (citing OUJI-CR 4-35)); Okla. Stat. tit. 21, § 843.5(A).

Petitioner's jury heard evidence demonstrating that between the time Rhonda left J.F. in the care of Petitioner at 8:00-9:00 a.m., and the time Rhonda returned at approximately 1:00 p.m., J.F. went from being healthy to being nonresponsive and unable to breathe normally. *See* Doc. 7-6, Tr. Vol. III at 613-14, 630-32.  During that time, Petitioner was the only adult present with J.F.  The jury also heard Petitioner admit to OSBI agents, during his audio-taped interview, that he shook J.F. on

16

May 23, 2007, just before he telephoned Rhonda at 11:00 a.m.  *See* Doc. 9, State's Ex. 5A.  The Court concludes that this evidence, when viewed in a light most favorable to the State, was sufficient to allow a rational trier of fact to have found beyond a reasonable doubt that Petitioner was guilty of Child Abuse.  Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of *Jackson*.  For that reason, habeas corpus relief is denied on Ground 4.

### 5.      Prosecutorial misconduct

In Ground 5, Petitioner claims that prosecutorial misconduct rendered his trial fundamentally unfair.  *See* Doc. 1 at 14.  On direct appeal, Petitioner claimed that, during closing argument, the prosecutor made two improper statements regarding the fact that Petitioner paid the fees for his expert witnesses, Drs. Posey and Gabriel.  *See* Doc. 6-1 at 43.  Specifically, Petitioner cited the prosecutor's comments that "[t]hey came all the way from California to testify.  Pretty hefty price tag. $25,000 for Dr. Posey to come," *see* Doc. 7-9, Tr. Vol. VI at 1628, and "those are the kinds of people that you are to listen to solely and exclusively because they are not biased?  They get paid a lot of money to come and testify," *id.*  The OCCA denied relief, citing *Williams v. State*, 188 P.3d 208, 230 (Okla. Crim. App. 2008), and finding that "prosecutorial misconduct did not deprive Appellant of his right to a fair trial.  Most comments at issue were proper and given the State's evidence against Appellant, any inappropriate comments did not deprive Appellant of a fair trial or affect the jury's finding of guilt or assessment of punishment."  *See* Doc. 6-4 at 3.

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974); *Cummings v. Evans*, 161 F.3d 610, 618

(10th Cir. 1998). In other words, "absent the infringement of a specific constitutional right, prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *DeRosa v. Workman*, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting *Donnelly*, 416 U.S. at 643). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

In this case, the Court agrees with the OCCA that the challenged comments were not improper. As a general matter, it is not improper to comment on a witness's credibility and possible bias through, for example, pointing out how much the witness had been paid to give his opinion, if the comments are supported by the evidence. *See Dickerson v. Commonwealth*, 485 S.W.3d 310, 333 (Ky. 2016); *see also U.S. v. Mullins*, 446 F.3d 750, 762 (8th Cir. 2006) (finding "it certainly was not improper for the prosecutor to point out potential biases of the defense expert"). In this case, the defense experts testified concerning payments they received for review of the medical records and for testifying at trial. *See* Doc. 7-8 , Tr. Vol. V at 1178, 1243, 1313, 1335. Thus, the prosecutor's comments during closing argument were supported by the evidence. Furthermore, the comments did not convey inflammatory, emotional expressions of personal offense or outrage. The comments were not improper and, when viewed in the context of the entire trial, did not result in a

18

fundamentally unfair trial.  Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  Habeas corpus relief on Ground 5 shall be denied.

### 6.    Ineffective assistance of trial counsel

In Ground 6, Petitioner claims that the trial court's decision to instruct on the lesser included offense of Child Abuse constituted state-induced ineffective assistance of counsel.  *See* Doc. 1 at 14.  Petitioner argued on direct appeal that his theory of defense was that J.F. died of natural causes, not shaken baby syndrome, and that, as a result, Petitioner was innocent of First Degree Child Abuse Murder.  *See* Doc. 6-1 at 45.  Based on that theory of defense, counsel chose to focus the defense on medical evidence concerning the cause of death, rather than the identity of the person who caused the victim's injuries.  *Id.* at 46-47.  However, "once the State was able to put forth to the jury the lesser-included offense instruction, it is easy to see the limitations" of the defense presented by counsel.  *Id.* at 47.  "This is so because raising a reasonable doubt by showing that *Rhonda* could just as easilty have caused the injuries to [J.F.] by shaking him would have addressed *both* the Murder charge *and* the Child Abuse charge."  *Id.*  The OCCA denied relief on this claim, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Davis v. State*, 123 P.3d 243, 246 (Okla. Crim. App. 2005), and finding that "the jury instructions on the lesser included offense of child abuse did not constitute State-induced ineffective assistance of counsel."  *See* Doc. 6-4 at 3.

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of the claim was an unreasonable application of *Strickland*.  Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  *Strickland*, 466 U.S. at 687;

*Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  *Strickland*, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  *Id.* at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.* at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails.  *Strickland*, 466 U.S. at 700.  Thus, it is not always necessary to address both *Strickland* prongs.  This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential."  *Pinholster*, 563 U.S. at 190 (noting that a habeas court must take a "highly deferential" look at counsel's performance under *Strickland* and through the "deferential" lens of § 2254(d)).

Based on a thorough review of the record, the Court finds that the OCCA did not unreasonably apply *Strickland* in denying Petitioner's claim of ineffective assistance of counsel.

20

Petitioner has failed to demonstrate that trial counsel performed deficiently with respect to formulating and presenting Petitioner's defense. Furthermore, as discussed above, the trial court did not err in giving an instruction on the lesser included offense of Child Abuse. Therefore, "separate consideration of the associated ineffective assistance claim[] is unnecessary." *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002). Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) on his Ground 6 claim of state-induced ineffective assistance of counsel.

### 7.    Cumulative error

In Ground 7, Petitioner alleges that the cumulative effect of multiple legal errors rendered his trial fundamentally unfair. *See* Doc. 1 at 16. On direct appeal, the OCCA denied relief, citing *DeRosa v. State*, 89 P.3d 1124, 1157 (Okla. Crim. App. 2004), and finding that "although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his trial fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively." *See* Doc. 6-4 at 3-4.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *U.S. v. Wood*, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) (citation omitted). "In the federal habeas context, the

only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Matthews v. Workman*, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting *Rivera*, 900 F.2d at 1470). "Only if the errors so fatally infected the trial that they violated the trial's fundamental fairness is reversal appropriate." *Id.* (internal quotation marks and citation omitted). "[A]ll a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." *Id.* at 1026.

In this case, the Court found no constitutional errors. As a result, there is no basis for a cumulative error analysis and Petitioner is not entitled to habeas corpus relief on his Ground 7 claim of cumulative error.

## C.    Certificate of appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Tommy Sharp, Warden, as party respondent in this case.

2. The petition for writ of habeas corpus (Doc. 1) is **denied**.

3. A separate judgment in favor of Respondent shall be entered in this matter.

4. A certificate of appealability is **denied**.

ORDERED THIS 6th day of January, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

23